[Cite as *State v. Walsky*, 2013-Ohio-4115.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellant/ Cross-Appellee, | : | |
| | : | **CASE NO. 2012-P-0109** |
| - vs - | : | |
| SAMANTHA J. WALSKY, | : | |
| Defendant-Appellee/ Cross-Appellant. | : | |

Criminal Appeal from the Portage County Municipal Court, Ravenna Division, Case No. R2012 TRC 02014.

Judgment: Affirmed in part, reversed in part, and remanded.

*Victor V. Vigluicci,* Portage County Prosecutor, and *Pamela J. Holder,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellant/Cross-Appellee).

*Jamison A. Offineer,* Student Legal Services, Inc., Kent State University, 164 East Main Street, #203, Kent, OH 44240 (For Defendant-Appellee/Cross-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} The state of Ohio appeals the judgment of the Portage County Municipal Court, Ravenna Division, granting a motion to suppress/motion in limine seeking to exclude the results of an Intoxilyzer 8000 test filed by appellee/cross-appellant, Samantha J. Walsky. Appellee/cross-appellant has filed a cross-appeal asserting the trial court erred in concluding the officer administering the breath test was appropriately

certified to conduct the subject breath test. For the reasons that follow, the trial court's judgment is affirmed in part, reversed in part, and remanded.

{¶2} On February 10, 2012, appellee/cross-appellant was cited for, inter alia, operating a vehicle under the influence ("OVI"), in violation of R.C. 4511.19(B)(3). Appellee/cross-appellant filed a motion to suppress/motion in limine. The state filed a memorandum in opposition. At a hearing on the dual motion, two issues were addressed. The first issue challenged the reliability and admissibility of the Intoxilyzer 8000 and the second issue challenged the arresting officer's qualification to administer the test.

{¶3} After considering the arguments, the trial court granted Walsky's motion to suppress/motion in limine on the issue of whether the state was required to produce evidence that the Intoxilyzer 8000 is reliable in order for her test results to be admissible at trial. Alternatively, the trial court ruled that, pursuant to the relevant statutes and administrative code sections, the officer's access card was sufficient, as a matter of law, to authorize an officer to administer a breath test using the Intoxilyzer 8000. The trial court granted the state's motion to stay execution of the judgment.

{¶4} The state appeals the trial court's judgment, asserting the following for its sole assignment of error:

{¶5} "The Portage County Municipal Court erred in permitting a general attack on the scientific reliability of the Intoxilyzer 8000 contrary to Ohio statutes and well-established case law."

{¶6} We review a trial court's legal determinations at a suppression hearing de novo. *State v. Dijsheff*, 11th Dist. Trumbull No. 2005-T-0001, 2006-Ohio-6201, ¶19.

2

{¶7} This court has recently ruled on this exact issue in *Carter, supra*. In *Carter*, this court reversed the trial court's decision requiring the state shoulder the initial burden of production for establishing the reliability of the Intoxilyzer 8000. This court held that once the state has demonstrated a statutorily-approved breath-testing device was used, a presumption of reliability attaches. *Carter* at ¶14. Once the presumption attaches, a defendant is entitled to make specific challenges to the general reliability of the Intoxilyzer 8000 in a motion to suppress. *Carter* at ¶43.

{¶8} *In State v. Miller*, 11th Dist. Portage No. 2012-P-0032, 2012-Ohio-5585, this court held:

> {¶9} In addition to attacks on the specific performance of a particular breath test in an individual defendant's case, a defendant may also make an attack on the reliability of the Intoxilyzer 8000 based on specific reasons. While, as discussed above, the machine is presumed to be generally reliable, a defendant may raise specific issues related to its reliability in a motion to suppress, as opposed to general assertions that the State failed to prove its reliability, which is prohibited under Vega. *See Vega* at 189. *Miller* at ¶37.

{¶10} Further, In *Miller*, *supra*, this court held a defendant can make "specific challenges to the Intoxilyzer's reliability," and "[a] defendant may * * * challenge the reliability of the Intoxilyzer 8000 with specific arguments * * *." *Id.* at ¶33.

{¶11} Moreover, this court has held that because the Intoxilyzer 8000 is presumed reliable, the defendant has the burden of production to present evidence that the instrument is not reliable. *Carter, supra,* at ¶39. If the defendant satisfies his initial

3

burden, the burden of proof then shifts to the state to produce evidence establishing the machine's reliability.

{¶12} As a practical matter, after both parties present the evidence in support of their respective positions, the trial court determines whether the defendant has met his initial burden of production. If the court determines that the defendant has not met his burden of production, the motion shall be denied. However, if the court finds that the defendant has satisfied his burden, the court shall then determine whether the state has satisfied its burden of proof. If it has, the motion shall be denied. However, if it has not, the motion shall be granted.

{¶13} The foregoing burden-shifting procedure has long been followed by federal and state courts in the analogous contexts of apparently lawful searches and confessions. With respect to searches following the issuance of a search warrant, a defendant has the initial burden to establish a prima facie case that the search was not lawful. Once that burden is met, the burden shifts to the state to prove the search was lawful. *U.S. v. Whitten*, 848 F.2d 195, 1988 U.S. App. LEXIS 6485, *3 (6th Cir.); *United States v. Murrie*, 534 F.2d 695, 697-698 (6th Cir.1976); *United States v. Triumph Capital Group, Inc.,* 2003 U.S. Dist. LEXIS 24776, *7-*8 (D.Conn.). Further, "[t]here are shifting burdens in suppression hearings regarding confessions." *United States v. Burnette*, 535 F.Supp.2d 772, 782 (E.D.Tex.2007). After the defendant satisfies his initial burden to show his confession was the result of a custodial interrogation, the burden shifts to the government to prove the evidence was not illegally obtained, i.e., that the Miranda warnings were given; the defendant waived them; and the confession was voluntary. *Id.* It is worth noting that trial courts typically decide whether the parties met their respective burdens after all evidence has been presented. *See e.g. Triumph*,

4

*supra*, at *8; *Murrie, supra*, at 696-698; *Burnette, supra*, at 779-780; *State v. Saffell*, 9th Dist. No. 2928, 1995 Ohio App. LEXIS 3060, *2-*4; *United States v. Bonds*, 2006 U.S. Dist. LEXIS 3436, *3-*5 (S.D.Miss.).

{¶14} Pursuant to *Carter* and *Rouse*, we hold the trial court erred in requiring the state to produce evidence of the Intoxilyzer 8000's general reliability, in granting appellee's motion, and in excluding the results of his breath test. Therefore, on remand, appellee/cross-appellant is entitled, but has the burden of production, to specifically challenge the general reliability of the Intoxilyzer 8000 according to the burden-shifting procedure outlined above.

{¶15} The state's assignment of error is well taken.

{¶16} Appellee/cross-appellant assigns the following error:

{¶17} "The trial court erred when it overruled Cross-Appellant's Motion to Suppress the results of the Intoxilyzer 8000 test even though the State Highway Patrolman who administered the test did not possess a valid permit as required by O.R. C. [Sec.] 4511.19(D)(1)(b) and O.R.C. [Sec.] 3701.143."

{¶18} Appellee/cross-appellant argues that, as a precursor to admitting breath test results, the state was required to demonstrate, as a foundational matter, the test was conducted by a qualified individual; namely, an individual holding a permit issued by the Director of Health, pursuant to R.C. 4511.19(D)(1)(b) and R.C. 3701.143. Because the state failed to show the administering officer had a permit, appellee/cross-appellant concludes the trial court erred in not suppressing her breath test results, regardless of the Intoxilyzer 8000's reliability.

{¶19} We must first discuss the relevant statutory and administrative code provisions. R.C. 4511.19 provides, in relevant part: "The bodily substance withdrawn

5

under division (D)(1)(b) of this section shall be analyzed in accordance with methods approved by the director of health by an individual possessing a *valid permit* issued by the director pursuant to section 3701.143 of the Revised Code." (Emphasis added) O.A.C. 3701.143 provides, in relevant part:

{¶20} For purposes of [section] * * * 4511.19, * * * of the Revised Code, the director of health shall determine, or cause to be determined, techniques or methods for chemically analyzing a person's * * * breath * * * in order to ascertain the amount of alcohol * * * in the person's * * * breath * * *. The director shall approve satisfactory techniques or methods, ascertain the qualifications of individuals to conduct such analyses, and *issue permits* to qualified persons authorizing them to perform such analyses. Such permits shall be subject to termination or revocation at the discretion of the director. (Emphasis added).

{¶21} Further, O.A.C. 3701-53-09(B) directs, in relevant part:

{¶22} Individuals desiring to function as senior operators or operators using instruments listed under paragraphs (A)(1), (A)(2), and (B) of rule 3701-53-02 of the Administrative Code [breath testing instrumentation other than the Intoxilyzer 8000 at issue] shall apply to the director of health for *permits* on forms prescribed and provided by the director of health. A separate application shall be filed for each type of evidential breath testing instrument for which the *permit* is sought. (Emphasis added)

6

**{¶23}** The code section then states that such permits shall be issued only to those qualified by specific procedures set forth under O.A.C. 3701-53-07.

**{¶24}** Finally, O.A.C 3701-53-09(D) directs, in relevant part: "Individuals desiring to function as operators using instruments listed under paragraph (A)(3) of rule 3701-53-02 of the Administrative Code shall apply to the director of health for operator *access cards* on forms prescribed and provided by the director of health." (Emphasis added). Pursuant to O.A.C. 3701-53-07, representatives of the Director of Health shall be responsible for certifying individuals to possess access cards for the operation of the Intoxilyzer 8000.

**{¶25}** Given the specific language of R.C. 4511.19 and R.C. 3701.143, appellee/cross-appellant maintains the Director of Health must issue a permit to an officer in order to qualify that officer to administer any approved breath-testing device. Appellee/cross-appellant points out, however, pursuant to OAC 3701-53-09(D), the Director of Health does not issue "permits" to certified operators of the Intoxilyzer 8000 but only "access cards." Therefore, appellee/cross-appellant contends the results taken from the Intoxilyzer 8000 cannot be used in her criminal prosecution because the issuance of an "access card" runs afoul of the enabling legislation requiring operators to possess a "permit."

**{¶26}** Although appellee/cross-appellant's argument sets forth a facial inconsistency, we maintain the director of health's decision to require an "access card," rather than a "permit," is consistent with the enabling legislation enacted by the General Assembly. A court's principal concern in ascertaining the meaning of a statute is the

7

General Assembly's intent.  *State v. Jackson*, 102 Ohio St.3d 380, 385, 2004-Ohio-3206, ¶34.  "All statutes [and code sections] relating to the same general subject matter must be read *in pari materia*, and in construing statutes *in pari materia*, this court must give them a reasonable construction so as to give proper force and effect to each and all of the statutes."  *State ex rel Herman v. Klopfleisch*, 72 Ohio St.3d 581, 585 (1995); see also *State ex rel. Ellis Super Valu, Inc. v. Indus. Comm'n*, 115 Ohio St.3d 224, 2007-Ohio-4920, ¶13 (noting that statutes must be read *in pari materia* with supplementary administrative code sections).  Indeed, statutory provisions "bearing upon the same subject matter should be construed harmoniously unless they are irreconcilable."  *State ex rel. Cordray v. Midway Motors Sales, Inc.* 122 Ohio St.3d 234, 2009-Ohio-2610, ¶25.  When considering an enactment, a court must not select a word or a sentence and dissociate it from the context of the whole, but must review its entirety to determine the intent of the enacting body.  *State v. Wilson*, 77 Ohio St.3d 334, 336 (1997).

{¶27}  We begin by noting that the term "permit" is not specifically defined in either R.C. Chapter 4511. or R.C. Chapter 3701.  We shall therefore look to the word's common definition to glean its meaning.  Webster's Dictionary defines "permit" as "a written warrant or license granted by one having authority."  Webster's New Collegiate Dictionary (1977), 854.  Given this definition, the quoted portions of R.C. 4511.19 and R.C. 3701.143 evince the General Assembly's intent to ensure an operator of a testing device is trained and certified by the Director of Health to perform the test using the approved equipment so that results are not compromised by operator error.  O.A.C. 3702-53-09(B) and (D) accomplish this goal by directing the operators of each machine to meet formal qualifications to earn their certifications.  We acknowledge, by virtue of

8

the language of the code, that an "access card" and a "permit" are not interchangeable; their distinguishing feature, however, does not appear to bear on the quality of the relative operator's training. To wit, the Tenth Appellate District has commented that the distinction is merely one of function, "as the operator access card must be physically swiped into a card reader on the Intoxilyzer 8000 in order to enter operator information, whereas the permit is not physically scanned" for other breath-testing devices. *State v. Castle*, 10th Dist. Franklin No. 12AP-369, 2012-Ohio-6028, ¶7. Given this point, the difference between an "access card" and a "permit," for operator certification purposes, is merely nominal. Reading the relevant code schemes *in pari materia*, we therefore conclude that an "access card" is tantamount to a "permit" or, in the alternative, can be reasonably construed to be a type of "permit," insofar as it is a formal means of ensuring that the operator of the Intoxilyzer 8000 has been formally trained and certified under the governing standards established by the Director of Health.[1]

**{¶28}** Appellee/cross-appellant's assignment of error is overruled.

**{¶29}** For the reasons stated in this opinion, it is the judgment and order of this court that the judgment of the Portage County Municipal Court, Ravenna Division, is reversed, and this matter is remanded to the trial court for further proceedings as set forth in this opinion.

DIANE V. GRENDELL, J., concurs in judgment only with a Concurring Opinion,

THOMAS R. WRIGHT, J., concurs in part and dissents in part, with a Concurring/Dissenting Opinion.

---

1. We recognize the administrative code is silent regarding the specific criteria an operator must meet to obtain an access card, i.e., the code merely delegates the certification process to a "representative of the director." Nevertheless, appellee/cross-appellant does not challenge the sufficiency of the certification process for an access card and thus we need not address that issue in this appeal.

DIANE V. GRENDELL, J., concurs in judgment only with a Concurring Opinion.

{¶30} I concur in the judgment of this court, that "the trial court erred in requiring the state to produce evidence of the Intoxilyzer 8000's general reliability." *Supra* at ¶ 15. I also concur as to the cross-assignment of error.

{¶31} I write separately, however, since I do not concur that a defendant bears the burden of production when challenging breath test results obtained from the Intoxilyzer 8000 in the context of a suppression hearing for the reasons stated in my concurring/dissenting opinions in *State v. Carter*, 11th Dist. Portage No. 2012-P-0027, 2012-Ohio-5583, and *State v. Rouse*, 11th Dist. Portage No. 2012-P-0030, 2012-Ohio-5584.

{¶32} In support of her position, the writing judge analogizes specific challenges to the instrument's general reliability to unconstitutional searches and seizures, such as where a defendant challenges a search that was conducted pursuant to a valid warrant with supporting affidavits. Challenges to the specific reliability of the Intoxilyzer 8000 are more properly understood in the context of challenges to scientific reliability as discussed in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *Miller v. Bike Athletic Co.*, 80 Ohio St.3d 607, 687 N.E.2d 735 (1998), rather than in the context of the Fourth Amendment exclusionary rule. A *Daubert/Miller* analysis focuses on the reliability of the underlying scientific principles and/or methodology involved, rather than the reliability of specific test results. *Daubert* at 595; *Miller* at 611-612.

10

**{¶33}** The problem with analogizing to *Daubert/Miller* to justify shifting the burden of demonstrating unreliability to the defendant is that this court has repeatedly held that the reliability of the Intoxilyzer 8000 cannot be challenged under *Daubert/Miller*. *See Rouse* at ¶ 28 ("appellee's argument that the Intoxilyzer 8000 is unreliable was an attack on the general reliability of a director-approved breath-testing instrument, which is prohibited by *Vega*," accordingly "we maintain a *Daubert* hearing is unnecessary as it pertains to the general reliability of the Intoxilyzer"); *Carter* at ¶ 40.

**{¶34}** The writing judge's present position appears to contradict this court's earlier pronouncements that challenges to the Intoxilyzer 8000 based on its general reliability may not be raised to suppress the test results. In contrast, this court has recognized that such challenges may be properly raised at trial, with the evidence going to the weight rather than the admissibility of the evidence. *State v. Miller*, 11th Dist. Portage No. 2012-P-0032, 2012-Ohio-5585, ¶ 31 (cases cited); *State v. Hatcher*, 11th Dist. Portage Nos. 2012-P-0077 and 2012-P-0078, 2013-Ohio-445, ¶ 24 ("the statutory recognition of the Intoxilyzer 8000's admissibility * * * does not prevent a defendant from introducing evidence as to the general unreliability of this specific machine through the use of expert opinion testimony," where "[s]uch testimony does not challenge the admissibility of the breath test results; rather it challenges the *weight and credibility* to be given to the results").

**{¶35}** The writing judge presents no convincing argument as to why the established procedures for conducting a hearing to suppress breath test results should be ignored when the subject of the motion concerns the Intoxilyzer 8000. With these reservations, I concur in the judgment of this court.

_____

11

THOMAS R. WRIGHT, J., concurs in part and dissents in part, with a Concurring/Dissenting Opinion.

{¶36} Regarding the state's assignment of error, I dissent for the reasons stated in my dissenting opinion in *State v. Lucarelli*, 11th Dist. Portage No. 2012-P-0065, 2013-Ohio-1606. Nevertheless, I concur with the analysis as to appellee/cross-appellant's assignment of error.