[Cite as *Parma v. Malinowski*, 2014-Ohio-1076.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
## No.   100087

# CITY OF PARMA

PLAINTIFF-APPELLEE

vs.

# ADAM A. MALINOWSKI

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Parma Municipal Court
Case No. 12 TRC 03580

**BEFORE:**  Boyle, A.J., Keough, J., and Stewart, J.

**RELEASED AND JOURNALIZED:**   March 20, 2014

**ATTORNEY FOR APPELLANT**

A. Dale Naticchia
4141 Rockside Road
Suite 230
Seven Hills, Ohio   44131

**ATTORNEYS FOR APPELLEE**

**For city of Parma**

Timothy G. Dobeck
City of Parma
Prosecuting Attorney
Richard A. Neff
Assistant Prosecuting Attorney
5555 Powers Boulevard
Parma, Ohio   44129

**For Ohio Municipal League**

Yazan S. Ashrawi
Philip K. Hartmann
Stephen J. Smith
Frost Brown Todd, L.L.C.
10 West Broad Street
Suite 2300
Columbus, Ohio   43215

John E. Gotherman
Ohio Municipal League
175 South Third Street
Suite 510
Columbus, Ohio   43215

MARY J. BOYLE, A.J.:

{¶1}   This cause came to be heard upon the accelerated calendar pursuant to App.R. 11.1 and Loc.R. 11.1.

{¶2}   Defendant-appellant, Adam Malinowski, appeals his conviction for driving a vehicle while under the influence of alcohol.   He raises one assignment of error for our review:

> Whether the trial court erred as a matter of law when it failed to suppress the results of the Intoxilyzer 8000 when the department of health failed to comply with the legislative mandate to set forth the qualifications of the persons who issued access cards to operate that device.

{¶3}   Finding no merit to his appeal, we affirm.

Procedural History

{¶4}   In March 2012, Malinowski was charged with speeding and operating a vehicle while under the influence of alcohol, in violation of Parma Codified Ordinances 333.01(A)(1)(a) and (d).   According to Malinowski, he was taken to the Parma police station where he submitted to a breath alcohol test performed on an Intoxilyzer 8000. According to the breath alcohol test, Malinowski had a blood alcohol level of 0.155.   He was subsequently charged with operating a vehicle with a blood alcohol concentration of 0.155.

{¶5}   Malinowski moved to suppress the results of the Intoxilyzer 8000.   The trial court denied his motion.   Subsequently, Malinowski pleaded no contest to operating a vehicle while under the influence of alcohol with a blood alcohol concentration of 0.155.   It is from this judgment that Malinowski appeals.

## Standard of Review

**{¶6}** In Malinowski's motion to suppress, he only raised questions of law. We therefore review the trial court's decision regarding the admissibility of the Intoxilyzer 8000 de novo, which means that we afford no deference to the trial court's decision. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

## Analysis

**{¶7}** In this case, Malinowski raises a very narrow issue.[1] He argues that the results of the Intoxilyzer 8000 are inadmissible because the Ohio Department of Health ("DOH") failed to promulgate rules regarding the qualifications required for personnel seeking to operate an Intoxilyzer 8000. Malinowski acknowledges that the officer who administered the test possessed an operator access card to operate the Intoxilyzer 8000, which was issued by the DOH, but he asserts that the DOH regulations do not set forth personnel qualifications to obtain an operator access card.[2] Malinowski contends that because the DOH failed to promulgate any rules regarding personnel qualifications for the Intoxilyzer 8000, the DOH did not comply with R.C. 3701.143 and, consequently, the test results are inadmissible under R.C. 4511.19(D)(1)(b).

---

[1]The city requests that before this court addresses the "narrow issue" raised by Malinowski, we should uphold "the presumption of reliability" set forth in *State v. Vega*, 12 Ohio St.3d 186, 465 N.E.2d 626 (1984) (which held that "an accused may not make a general attack upon the reliability and validity of the breath testing instrument"). We decline to do so because *Vega* has no applicability to the narrow issue raised on appeal.

[2]Effective July 25, 2013, the DOH amended its regulations to include qualifications for access card holders. But the amendment is not relevant to this appeal.

**{¶8}** Through the enactment of R.C. 4511.19(D)(1)(b), the Ohio General Assembly empowered the DOH to determine the appropriate means and methods for analyzing an individual's breath-alcohol concentration. R.C. 4511.19(D)(1)(b) provides in relevant part that evidence on the concentration of alcohol in an individual's breath may be admitted into evidence at trial if it has been "analyzed in accordance with methods approved by the director of health by an individual possessing a *valid permit* issued by the director pursuant to section 3701.143 of the Revised Code." (Emphasis added.)

**{¶9}** R.C. 3701.143 provides that for purposes of R.C. 4511.19, the DOH shall determine:

> [T]echniques or methods for chemically analyzing a person's * * * breath * * * in order to ascertain the amount of alcohol * * * in the person's * * * breath * * *. The director shall approve satisfactory techniques or methods, *ascertain the qualifications* of individuals to conduct such analyses, and *issue permits* to qualified persons authorizing them to perform such analyses. Such permits shall be subject to termination or revocation at the discretion of the director.

(Emphasis added.)

**{¶10}** Chapter 3701-53 of the Ohio Administrative Code contains the department of health's methods, techniques, and qualifications that it implemented pursuant to R.C. 3701.143. Ohio Adm.Code 3701-53-02(A)(3) specifically provides that the Intoxilyzer 8000 is an approved breath testing instrument. Ohio Adm.Code 3701-53-09 explains how a person becomes qualified to operate that instrument. Under Ohio Adm.Code 3701-53-09(D), persons desiring to become operators of the Intoxilyzer 8000

shall apply to the director of health for operator access cards on forms prescribed and provided by the director of health. The director of health shall issue operator access cards to perform tests to determine the amount of alcohol in a person's breath to individuals who qualify under the applicable provisions of rule 3701-53-07 of the Administrative Code.

{¶11} In plain terms, those desiring to operate the Intoxilyzer 8000 must apply for an operator access card, which the director of health shall then issue to those who qualify under the provisions of Ohio Adm.Code 3701-53-07.

{¶12} Ohio Adm.Code 3701-53-07(E), which is titled "Qualifications of personnel," provides that

An individual meets the qualifications for an operator's permit by:

(1) Being a high school graduate or having passed the "General Education Development Test";

(2) Being a certified law enforcement officer sworn to enforce sections 4511.19 and/or 1547.11 of the Revised Code, or any other equivalent statute or local ordinance prescribing a defined or prohibited breath alcohol concentration, or a certified corrections officer, and;

(3) Having demonstrated that he or she can properly operate the evidential breath testing instrument by having successfully completed a basic operator or conversion training course for the type of approved evidential breath testing instrument for which he or she seeks a permit.

{¶13} Ohio Adm.Code 3701-53-07(E) sets forth the qualifications for an "operator's permit," but does not mention separate qualifications for the issuance of an "operator access card" as described in Ohio Adm.Code 3701-53-09(D).

{¶14} Malinowski acknowledges that under the relevant administrative code provisions in effect when he was charged, the DOH required an operator of an Intoxilyzer 8000 to have an operator access card. He further acknowledges that the officer who

administered his test had an operator access card that was issued by the DOH to operate the Intoxilyzer 8000. But he contends that the director had only promulgated qualifications for the issuance of permits, not access cards. Based on the absence of language specifically listing qualifications for an operator access card, Malinowski maintains that the director of health failed to promulgate any regulations for the issuance of that type of card.

{¶15} The First District addressed this exact issue in *State v. McMahon*, 1st Dist. Hamilton No. C-120728, 2013-Ohio-2557.[3] Although the First District had the benefit of testimony from the DOH's program administrator for alcohol and drug testing, we still find its reasoning in the case applicable to Malinowski's arguments here. In *McMahon*, the program administrator testified at the suppression hearing that a person who wants to operate an Intoxilyzer 8000 must fill out an application pursuant to Ohio Adm.Code 3701-53-09(D) and must meet the qualifications found in Ohio Adm.Code 3701-53-07(E). *Id.* at ¶ 11. According to the program administrator, "an access card is the type of permit that is issued to an operator of the Intoxilyzer 8000."

{¶16} The First District reasoned:

> [T]he relevant administrative code provisions, when read in conjunction, support the department of health's interpretation. Ohio Adm.Code 3701-53-09(D) indicates that individuals qualified to use the Intoxilyzer 8000 machine are referred to as operators, and that such operators shall be issued access cards to perform breath tests. Ohio Adm.Code 3701-53-07 provides qualifications for the issuance of either

---

[3] Although this case was released after the effective date of the amendments to the administrative code, the applicable regulations at issue in the case were the same as here.

operator permits or senior operator permits; it categorizes the issuance of permits into these two groups, rather than by the type of machine being operated. Since users of the Intoxilyzer 8000 machine are operators, reason dictates that they would be issued, if the required qualifications are met, operator permits under Ohio Adm.Code 3701-53-07(E). It is a reasonable interpretation of these provisions that the access card referenced in Ohio Adm.Code 3701-53-09(D) is the type of permit issued to an operator of an Intoxilyzer 8000 machine under Ohio Adm.Code 3701-53-07(E).

This interpretation prevents the severe and unreasonable effect that would result from the trial court's ruling, which would be the exclusion of any breath test administered on an Intoxilyzer 8000 machine. And it gives effect to the intent of the legislature and the department of health, namely, to have qualified operators of the Intoxilyzer 8000 be issued access cards so that they may conduct breath tests on the machine, and to have the results of those tests be admissible in a prosecution under R.C. 4511.19.

*McMahon* at ¶ 14 - 15.

**{¶17}** After reviewing the relevant statutory provisions, as well as the relevant administrative code sections, we agree with the reasoning set forth in *McMahon*. Ohio Adm.Code 3701-53-09(D) specifically states that operator access cards will be given to those operators who qualify under Ohio Adm.Code 3701-53-07. This rule specifically sets forth qualifications for those desiring to obtain an "operator's permit." It is our view that under the relevant code provisions, an "operator's access card" for the Intoxilyzer 8000 is tantamount to an "operator's permit" for other approved testing instruments. Thus, we conclude that the DOH properly set forth qualifications for those desiring to operate the Intoxilyzer 8000.

**{¶18}** Indeed, the legislative intent behind R.C. 4511.19 and 3701.143 is to ensure that operators of testing instruments are properly trained and certified by the DOH to

perform the specific test on a specific instrument. *State v. Walsky*, 11th Dist. Portage No. 2012-P-0109, 2013-Ohio-4115, ¶ 27. Ohio Adm.Code 3702-53-09 and 3702-53-07 accomplish this goal for the Intoxilyzer 8000. There is no question that the operator of the Intoxilyzer 8000 in this case was formally trained and certified to operate the instrument under the governing standards established by the DOH.

{¶19} Malinowski further argues that *State v. Ripple*, 70 Ohio St.3d 86, 637 N.E.2d 304 (1994), supports his argument that the results of his breath test were not admissible because the DOH did not promulgate qualifications for access card holders. In *Ripple*, the Ohio Supreme Court held that

> [a]bsent approval of methods by the director of health pertaining to the testing of bodily substances for drugs, a chemical analysis purporting to indicate the presence of drugs in an accused is inadmissible in a prosecution brought pursuant to R.C. 4511.19.

*Id.* at the syllabus. Based upon our previous analysis that the DOH complied with the legislative requirements set forth in R.C. 4511.19 and 3701.143, *Ripple* has no applicability here.

{¶20} Accordingly, Malinowski's sole assignment of error is overruled.

{¶21} In our discretion, this court permitted the Ohio Municipal League to file an amicus curiae brief in support of the city of Parma. The Ohio Municipal League requests this court to consider issues not raised by Malinowski. We recognize that the appearance of amicus curiae is permitted for the purpose of assisting the court on matters of law about which the court is doubtful. *Pepper Pike v. Hirschauer*, 8th Dist. Cuyahoga Nos. 56963, 56964, 56965, and 57667, 1990 Ohio App. LEXIS 297, *13 (Feb. 1, 1990), citing *Columbus v. Tullos*, 1 Ohio App.2d 107, 204 N.E.2d 67 (10th Dist.1964).

But "amicus curiae have no right to become a party to an action and may not, therefore, interject issues and claims not raised by the parties." *Id.* Accordingly, we decline to address the additional issues argued by the Ohio Municipal League.

**{¶22}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Parma Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, ADMINISTRATIVE JUDGE

KATHLEEN ANN KEOUGH, J., and
MELODY J. STEWART, J., CONCUR