The STATE of Ohio, Appellee,

v.

BOOTH, Appellant.

[Cite as *State v. Booth*, 151 Ohio App.3d 635, 2003-Ohio-829.]

Court of Appeals of Ohio,
Ninth District, Medina County.

No. 02CA0061–M.

Decided Feb. 26, 2003.

Ronald T. Gatts, for appellant.

Charlene Zee, Lawrence J. Courtney and Susan Gates, Assistant City Prosecutors, for appellee.

———

CARR, Judge.

{¶ 1} Appellant, Janella J. Booth, appeals the decision of the Medina Municipal Court, which found her guilty of operating a vehicle with a prohibited blood alcohol concentration. This court affirms.

I

{¶ 2} On April 21, 2001, appellant was arrested and cited for operating a motor vehicle with a prohibited alcohol content, driving under the influence of alcohol, failure to stop at a red light, and failure to wear a safety belt.

{¶ 3} The instrument check solution used to calibrate the BAC DataMaster in this case is known as lot number 00120, bottle number 437. According to the record, this solution was used from February 19, 2001, until it was discarded around May 14, 2001. The solution had a target value of .099, plus or minus .005.

{¶ 4} On April 9, 2001, Sergeant Hill of the Ohio State Highway Patrol introduced bottle number 437 as the instrument check solution into the BAC DataMaster at the state highway patrol post and obtained a reading of .093. Sergeant Hill testified that he believed that he received the reading, which was outside of the target value, in error because he did not allow the solution to reach 34 degrees plus or minus .2 degrees Celsius before he attempted to calibrate the machine. Therefore, Sergeant Hill waited approximately 25 minutes and introduced the same solution into the machine. The second time Sergeant Hill introduced the solution from bottle number 437, he obtained a reading of .095,

which is within the target value plus or minus .005 of that solution. Sergeant Hill kept the .093 test result, but he did not fill out a separate instrument check form. Instead, Sergeant Hill stapled the BAC DataMaster evidence ticket to the back of the instrument check form for the .095 result.

{¶ 5} On April 16, 2001, Sergeant Shirkey of the Ohio State Highway Patrol used the same bottle, number 437, and he obtained a reading of .095. Appellant took her breath test on April 21, 2001, and tested a .167. On April 23, 2001, Sergeant Shirkey did an instrument calibration test using bottle number 437 and received a result of .095.

{¶ 6} On May 24, 2001, appellant filed a motion to suppress/motion in limine, claiming that the breathalyzer machine was not properly calibrated on April 9, 2001. The trial court denied appellant's motion. Appellant then pled no contest to the charge of operating a motor vehicle with a prohibited alcohol content. The trial court accepted appellant's plea, found her guilty, and sentenced her accordingly.

{¶ 7} Appellant timely appealed, setting forth two assignments of error for review.

## II

### First Assignment of Error

{¶ 8} "Whether the court erred in concluding that the senior officer had substantially complied with the procedures of the Ohio Administrative Code 3701–53–01(E) relating to record keeping of instrument checks when he failed to properly record and preserve an instrument check sheet?"

### Second Assignment of Error

{¶ 9} "Whether the court erred in concluding that the senior officer had substantially complied with the procedures of the Ohio Administrative Code 3701–53–04 relating to instrument checks when the senior officer failed to test the BAC Datamaster Breathalyzer machine with a new solution once the initial solution tested outside of the target range?"

{¶ 10} Appellant combined her two assignments of error into one argument in her brief; therefore, they will be combined for purposes of this court's discussion.

{¶ 11} In both assignments of error, appellant argues that the trial court erred in finding that Sergeant Hill substantially complied with the procedures set forth in the Ohio Administrative Code on April 9, 2001. This court disagrees.

{¶ 12} As a preliminary matter, this court notes that an appellate court's review of a ruling on a motion to suppress evidence presents a mixed question of

law and fact. *State v. Long* (1998), 127 Ohio App.3d 328, 332, 713 N.E.2d 1. When considering a motion to suppress, a trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate witness credibility. *State v. Curry* (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172. Thus, "a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas v. United States* (1996), 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911. Accordingly, this court will accept the factual determinations of the trial court so long as they are supported by competent and credible evidence; however, without deference to the trial court's conclusion, this court will determine "whether, as a matter of law, the facts meet the appropriate legal standard." *Curry*, 95 Ohio App.3d at 96, 641 N.E.2d 1172.

{¶ 13} R.C. 4511.19(D)(1) provides that the analysis of bodily substances must be conducted in accordance with methods approved by the Ohio Director of Health, as codified in the Ohio Administrative Code. Results of alcoholic concentration tests are admissible upon a showing of substantial compliance with the regulations of the administrative code. *Defiance v. Kretz* (1991), 60 Ohio St.3d 1, 3, 573 N.E.2d 32; see, also, *State v. Brown* (1996), 109 Ohio App.3d 629, 632, 672 N.E.2d 1050. R.C. 3701.143 authorizes the Director of Health to issue regulations regarding blood, breath, and urine testing for drugs and alcohol. The Ohio Department of Health regulations impose certain requirements for the administration of alcohol tests. Substantial compliance with these administrative rules is required in order for the alcohol test results to be admissible in evidence. *Kretz*, 60 Ohio St.3d at 3, 573 N.E.2d 32; *State v. Plummer* (1986), 22 Ohio St.3d 292, 22 OBR 461, 490 N.E.2d 902, syllabus. Once the state has established substantial compliance with the administrative rules, the burden then shifts to the defendant to demonstrate that he would be prejudiced by anything less than literal compliance. *State v. Brown* (1996), 109 Ohio App.3d 629, 632, 672 N.E.2d 1050.

{¶ 14} In *Pioneer v. Martin* (1984), 16 Ohio App.3d 478, 479, 16 OBR 561, 476 N.E.2d 1098, the court held:

{¶ 15} "[A]s long as the proper pre-test calibration of the intoxilyzer machine occurs, the test result is admissible as evidence. * * * Likewise, a proper calibration within seven days of a particular test is sufficient and renders that test in compliance with rules and regulations of the Ohio Department of Health." See, also, *State v. Stecion* (Jan. 30, 2002), 9th Dist. No. 20626, 2002 WL 121201.

{¶ 16} Calibration is the process by which a breathalyzer machine is tested for its range of accuracy. Ohio Adm.Code 3701–53–04 establishes a detailed procedure that requires the calibration of breath testing instruments at least once

every seven days. This rule specifies several additional safeguards concerning the conditions under which such calibrations are to occur. Ohio Adm.Code 3701–53–04(A)(1) and (2). The overall goal of these calibration procedures is to insure the accuracy of breathtesting results.

{¶ 17} Ohio Adm.Code 3701–53–04(E) and 3701–53–01(A) require that the results of instrument checks be retained for at least three years. Appellant argues that Sergeant Hill did not comply with Ohio Adm.Code 3701–53–01(A) because he did not record the results of the first test of the instrument check solution on April 9, 2001. In addition, appellant avers that Sergeant Hill did not comply with Ohio Adm.Code 3701.53–04(A)(2) because he did not use a different bottle of instrument check solution when he tested the breathalyzer machine the second time that same day.

{¶ 18} While it is true that Sergeant Hill did not record the results the first time he introduced the solution into the BAC DataMaster on April 9, 2001, he was not required to do so since it was not a true instrument check. The uncontroverted evidence was that Sergeant Hill had not allowed the solution to warm up sufficiently in order to conduct the test properly. After the solution had reached the proper temperature and was reintroduced, he obtained the reading of .095, which was within the target range. An instrument check was then performed on the BAC DataMaster in question on April 16, 2001, with the same result of .095. Appellant's BAC test was conducted on that machine on April 21, 2001. Therefore, this court finds that the state was in strict compliance with the Ohio Administrative Code.

### III

{¶ 19} Having found that the state was in strict compliance with the Ohio Administrative Code, this court finds that appellant's assignments of error are without merit. The decision of the Medina Municipal Court is affirmed, albeit for reasons different from those expressed by that tribunal.

Judgment affirmed.

SLABY, P.J., and BAIRD, J., concur.