[Cite as *State v. Jones*, 2013-Ohio-4114.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2012-P-0107** |
| KYLE R. JONES, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal from the Portage County Municipal Court, Ravenna Division, Case No. R2011 TRC 14638.

Judgment:  Reversed and remanded.

*Victor V. Vigluicci,* Portage County Prosecutor, and *Pamela J. Holder,* 241 South Chestnut Street, Ravenna, OH  44266 (For Plaintiff-Appellant).

*Joseph C. Patituce,* Patituce & Associates, LLC, 26777 Lorain Road, Suite 708, North Olmsted, OH  44070 (For Defendant-Appellee).


CYNTHIA WESTCOTT RICE, J.

{¶1}    The state of Ohio appeals the judgment of the Portage County Municipal Court, Ravenna Division, which granted appellee Kyle R. Jones' motion to suppress the results of his Intoxilyzer 8000 test.  Jones asserted a general challenge to the reliability of the Intoxilyzer 8000.  He also challenged the specific testing procedure used for his test.  For the reasons that follow, we reverse and remand.

**{¶2}** On November 14, 2011, Jones was cited for speeding, in violation of R.C. 4511.21(C). He was also cited for operating his vehicle under the influence of alcohol ("OVI") and driving with a prohibited blood-alcohol concentration, in violation of R.C. 4511.19(A)(1)(a) and 4511.19(A)(1)(d), respectively. Jones pled not guilty.

**{¶3}** Subsequently, Jones filed a motion to suppress, challenging his breath-test results. He argued the specific Intoxilyzer 8000 device used to test his breath is not reliable due to prior errors it has allegedly made. He also argued his test was not administered in compliance with Ohio Adm.Code 3701-53-04(B), which requires a dry gas control be automatically performed before and after every subject test, and that the Ohio Department of Health altered records of his test results.

**{¶4}** The state filed a brief in opposition, arguing that Jones' motion to suppress constituted a general challenge to the reliability of the Intoxilyzer 8000. The state argued it was not required to present evidence that the Intoxilyzer 8000 is reliable because the legislature had delegated this determination to the Director of Health and the Supreme Court of Ohio upheld this delegation of authority in *State v. Vega*, 12 Ohio St.3d 185 (1984).

**{¶5}** At the outset of the suppression hearing, defense counsel stated Jones was not making a general attack on the Intoxilyzer 8000. Instead, he argued that the specific machine used in this case is not reliable and that the state was required to show this machine is in proper working order.

**{¶6}** In the early morning hours of November 12, 2011, State Trooper Thomas Hermann clocked Jones driving 58 mph in a 45 mph zone. The trooper stopped Jones. Upon approaching Jones' vehicle, the trooper detected an odor of an alcoholic

beverage. The trooper noticed Jones' eyes were glassy and bloodshot and his speech was slurred. Based on these observations, the trooper asked Jones to exit his vehicle for field sobriety tests. The trooper noticed a strong odor of alcohol on Jones' breath. Jones failed each of the field sobriety tests, and the trooper arrested him for OVI. Jones submitted to an Intoxilyzer 8000 breath test, which resulted in a reading of .129.

{¶7} Mary Martin, the Ohio Department of Health Program Administrator for Alcohol and Drug Testing, testified she is responsible for reviewing and revising the Department's rules and regulations. She is familiar with all Department-approved breath-testing instruments. She has been trained regarding the construction and operation of the Intoxilyzer 8000 by its manufacturer. She said that as part of her job, she trains judges, prosecutors, and defense attorneys regarding the Intoxilyzer 8000.

{¶8} Ms. Martin said that upon completion of a breath test by the Intoxilyzer 8000, the instrument prints out a report of the defendant's test called a "Subject Test Report," which includes the offender's personal information, his arrest information, and his test information.

{¶9} Ms. Martin said that a "subject test" is not defined in the Administrative Code or the Revised Code. However, she said a "subject test" is the entire breath test as reported in the "Subject Test Report." She said that is what was meant by the phrase "subject test" when Ohio Adm.Code 3701-53-04 was adopted. She said a subject test requires two breath samples to be a valid subject test. She said the Department uses the lower of the two readings as the chargeable per-se level.

{¶10} Ms. Martin said that, pursuant to Ohio Adm.Code 3701-53-04(B), one dry gas control is performed at the beginning of the subject test and one dry gas control is

3

performed at the end of the subject test. She said the study guide printed by the Department for police officers trained on the Intoxilyzer 8000 references two dry gas controls, one before the subject test and one after it.

{¶11} Ms. Martin identified Jones' Subject Test Report printed by the Intoxilyzer 8000. The report shows that the instrument took two breath samples from Jones. Before Jones gave his first breath sample, the Intoxilyzer 8000 conducted a dry gas control test as part of its calibration process. The machine ran another dry gas control test after Jones gave his second breath sample.

{¶12} Ms. Martin said the original Subject Test Report form, which was used for Jones' test, referred to the two breath samples that are blown into the Intoxilyzer 8000 as "Subject Test 1" and "Subject Test 2." She said the original form and Ohio Adm.Code 3701-53-04(B), which also references the phrase "subject test," were drafted by her predecessor at the Department. She said that using the phrase "Subject Test 1" and "Subject Test 2" on the original form to refer to the two breath samples caused confusion because the phrase "subject test" is also used in the title of the test report. As a result, in November 2011, she revised the Subject Test Report form to refer to the two breath samples as "Subject Sample 1" and "Subject Sample 2." This change was made with the approval of the Director of Health. Ms. Martin said that when she changed the Subject Test Report form, the change had no effect on prior tests. She said that Jones was tested on the Intoxilyzer 8000 before this change to the form, and that the Subject Test Report printed by the Intoxilyzer 8000 in connection with Jones' test remains the same.

{¶13} Ms. Martin said that all Intoxilyzer 8000 instruments in Ohio are connected to the Department's database, which is referred to as COBRA. She said all data on the Subject Test Report forms is uploaded to the database in a read-only format so that the data cannot be changed. The completed form itself is not uploaded to the Department's database; only the data contained in the form is uploaded. The server retrieves the data, which is included on a spreadsheet in rows and blocks of information.

{¶14} In contrast to the database, the Department has also created a website, which contains all test results uploaded to the Department's database. While the data uploaded by the Intoxilyzer 8000 instruments from the Subject Test Reports cannot be changed, the forms used by the Department's website to report the data can be and occasionally are changed to, e.g., include or exclude certain data in the database, to change the order in which data is included, to increase the size of certain fields to allow additional data to be included to correctly reflect the data in the database, or to change the title of a field.

{¶15} Ms. Martin said that when the Department changed the language on the Subject Test Report form in November 2011 from "Subject Test 1" and "Subject Test 2" to "Subject Sample 1" and "Subject Sample 2," this change was reflected on all Subject Test Report forms printed by the Intoxilyzer 8000 after that date. This change was also reflected on the Department's website. This change did not, however, alter the actual test results or any data contained in the Subject Test Reports.

{¶16} Ms. Martin said the website is not meant to provide evidence. The breath instrument itself prints a Subject Test Report of a defendant's breath test, which is used as evidence in court. In contrast, the purpose of the website is to provide information

5

that can be easily accessed by prosecutors and defense counsel so they do not have to travel to the police department to obtain breath-test results.

**{¶17}** Ms. Martin said that the data in all Subject Test Reports is uploaded to the Department's database and that the Department retains the data contained in the database indefinitely.

**{¶18}** Finally, Patrick Sullivan, Breath-Testing Inspector for the Department, testified he instructs on the proper operation of the Intoxilyzer 8000. He said he certified the subject Intoxilyzer 8000 used to test Jones' breath as working properly as of the date of Jones' test. Following Mr. Sullivan's testimony, Jones' attorney withdrew his challenge to the reliability of this specific instrument.

**{¶19}** Following the presentation of the evidence, the court entered judgment granting Jones' motion to suppress the results of his breath test. The court found that Jones made a general attack on the reliability of the Intoxilyzer 8000, which placed the burden on the state to prove the instrument is reliable. The court concluded that, because the state did not produce such evidence, Jones' motion to suppress was granted and the per-se violation was dismissed.

**{¶20}** The court further found that, pursuant to the express language of the Ohio Administrative Code, a dry gas control must be performed before and after every subject test and that, since a dry gas control was not run between Subject Test 1 and Subject Test 2, Jones' test did not comply with the Administrative Code and the test results were inadmissible.

**{¶21}** Further, the court found that by changing the terms used to refer to Jones' breath samples from "Subject Test 1" and "Subject Test 2" to "Subject Sample 1" and

6

"Subject Sample 2" on the Department's website, it had changed the records of Jones' breath test. The court found that Ms. Martin's testimony that the Department only changed the forms on its website, not the records of Jones' test results, was "faulty and wrong." The court found that, because the Department's website maintains records of breath-test results, not forms, the records of Jones' test results were changed by the Department.

{¶22} The trial court granted the state's motion to stay execution of the judgment pending appeal.

{¶23} The state appeals the trial court's judgment, asserting three assignments of error. For its first assigned error, the state alleges:

{¶24} "The Portage County Municipal Court erred in permitting a general attack on the scientific reliability of the Intoxilyzer 8000 contrary to Ohio statutes and well-established case law."

{¶25} We review a trial court's legal determinations at a suppression hearing de novo. *State v. Dijsheff*, 11th Dist. No. 2005-T-0001, 2006-Ohio-6201, ¶19.

{¶26} Jones argued below that he was not making a general challenge to the reliability of the Intoxilyzer 8000. Instead, he argued the specific device used to test his breath samples was not reliable due to its prior alleged errors. However, this court has held that a challenge to a breath-test result on the ground that the specific device has previously malfunctioned is prohibited as a general challenge to the reliability of the instrument. *State v. Urso*, 195 Ohio App.3d 665, 2011-Ohio-4702, ¶91 (11th Dist.). As a result, we agree with the trial court's finding that Jones made a general attack on the

7

reliability of the Intoxilyzer 8000. We do not, however, agree with the trial court's ruling that Jones was entitled to make such a challenge.

{¶27} In State v. *Carter*, 11th Dist. No. 2012-P-0027, 2012-Ohio-5583, this court followed the Supreme Court of Ohio's decision in *Vega*, *supra*, in acknowledging that the General Assembly in R.C. 3701.143 authorized the Director of Health to determine techniques for chemically analyzing the amount of alcohol contained in a person's breath. *Carter* at ¶16-17. Further, this court recognized that R.C. 4511.19(D)(1)(b) requires breath samples be analyzed for alcohol content in accord with methods approved by the Director of Health pursuant to R.C. 3701.143. *Carter* at ¶20. This court noted that the Director of Health, at Ohio Adm.Code 3701-53-02(A)(3), approved the Intoxilyzer 8000 as an evidential breath-testing instrument. *Carter* at ¶21.

{¶28} Further following *Vega*, this court in *Carter* stated that R.C. 4511.19 represented a legislative determination that breath-testing devices adopted by the Director of Health are generally reliable. *Carter* at ¶24, citing *Vega* at 188. This court stated that, "'in light of R.C. 4511.19, an accused may not make a general attack upon the reliability * * * of a breath testing instrument.'" *Carter* at ¶25, quoting *Vega* at 190.

{¶29} This court held that since the General Assembly has legislatively determined that the Intoxilyzer 8000 is reliable, it must be presumed this device is reliable. *Carter* at ¶37. Therefore, this court held that the state did not have the burden to produce evidence of the machine's reliability in order for the defendant's breath-test results to be admissible at trial. *Id.* at ¶39.

{¶30} This court in *Carter* held that, although the Intoxilyzer 8000 is presumed reliable, a defendant is entitled to make specific challenges to the general reliability of

8

the Intoxilyzer 8000. *Carter* at ¶43, citing *Vega*. However, because the Intoxilyzer 8000 is presumed reliable, the defendant has the burden of production to present evidence that the instrument is not reliable. *Carter*, *supra.*

**{¶31}** Pursuant to *Carter*, we hold the trial court erred in requiring the state to produce evidence of the Intoxilyzer 8000's general reliability; in granting Jones' motion; and in excluding the results of his breath test.

**{¶32}** Therefore, on remand, the trial court is instructed to reinstate Jones' per-se charge. The state's first assignment of error is sustained.

**{¶33}** For its second assignment of error, the state alleges:

**{¶34}** "The Portage County Municipal Court erred in finding the testing protocol for the Intoxilyzer 8000 did not comply with Ohio Adm.Code 3701-53-04(B), rendering the test results inadmissible at trial."

**{¶35}** "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8. The appellate court must accept the trial court's factual findings, provided they are supported by competent, credible evidence. *Id*. Thereafter, the appellate court must determine, without deference to the trial court, whether the applicable legal standard has been met. *Id*. Thus, we review the trial court's application of the law to the facts de novo. *Id*.

**{¶36}** Pursuant to the burden-shifting procedure that governs the admissibility of breathalyzer test results, the defendant must first challenge the validity of the test in a pretrial motion to suppress. *Urso, supra*, at ¶33. The state then has the burden to show the test was administered in substantial compliance with regulations prescribed by the Director of Health. *Id.* After the state satisfies this burden, the burden then shifts to the

9

defendant to demonstrate he was prejudiced by anything less than strict compliance. *Id*. We consider whether the facts in the instant case demonstrate substantial compliance with the Department of Health regulations under a de novo standard of review. *Burnside, supra.*

{¶37} Pursuant to R.C. 3701.143, the Director of Health is authorized to issue regulations regarding blood, breath, and urine testing for drugs and alcohol. The approved methods for chemically analyzing a person's breath are set forth in Ohio Adm.Code 3701-53-01, et seq. Pertinent to this appeal is Ohio Adm.Code 3701-53-04, which specifies the "instrument check," or calibration requirements for approved breath-testing machines. Ohio Adm.Code 3701-53-04(B) provides: "Instruments listed under paragraph (A)(3) of rule 3701-53-02 of the Administrative Code [i.e., the Intoxilyzer 8000] shall automatically perform a dry gas control test *before and after every subject test* * * * using a dry gas standard traceable to the national institute of standards and technology (NIST)." (Emphasis added.)

{¶38} "Calibration is the process by which a breathalyzer machine is tested for its range of accuracy." *See State v. Booth*, 151 Ohio App.3d 635, 638 (9th Dist.2003). The calibration sequence for the Intoxilyzer 8000 is documented in a form prepared by the Director of Health called the "Subject Test Report." As of the date of Jones' test, the report set forth the actual calibration procedure as follows:

{¶39} "[1.] Air Blank

{¶40} "[2.] Diagnostic

{¶41} "[3.] Air Blank

{¶42} "[4.] Dry Gas Control

10

{¶43} "[5.] Air Blank

{¶44} "[6.] Subject Test 1

{¶45} "[7.] Air Blank

{¶46} "[8.] Air Blank

{¶47} "[9.] Subject Test 2

{¶48} "[10.] Air Blank

{¶49} "[11.] Dry  Gas Control

{¶50} "[12.] Air Blank"

{¶51} "Air Blanks" ensure that the previous breath sample has been purged from the machine. "Subject Test 1" and "Subject Test 2" indicate each time an individual blows into the machine. "Dry Gas Control" tests check the calibration of the instrument to ensure its results are accurate. *Id.*

{¶52} Jones argues that, since the Subject Test Report refers to the breath samples as "Subject Test 1" and "Subject Test 2," a subject test occurs each time an accused blows into the machine.  He argues that, because Ohio Adm.Code 3701-53-04(B) requires a dry gas control test before and after every subject test, a dry gas control had to be performed before and after each blow into the machine.  He argues the Intoxilyzer 8000 used to test his breath samples did not run a dry gas control before and after each time he blew into the instrument, as required by Ohio Adm.Code 3701-53-04(B), and the results are therefore inadmissible.

{¶53} In contrast, the state argues the term "subject test" as used in Ohio Adm.Code 3701-53-04(B) refers to the breath test as a whole so that a dry gas control

was only required before the first breath sample was blown and after the second sample was blown.

**{¶54}** Resolution of this issue requires us to interpret Ohio Adm.Code 3701-53-04(B). Interpretation of an administrative regulation presents a question of law that we review de novo without deference to the ruling of the trial court. *State v. Consilio*, 114 Ohio St.3d 295, 2007-Ohio-4163, ¶18. In determining what is meant by the phrase "subject test," we first look to the plain language of the regulation. *Provident Bank v. Wood*, 36 Ohio St.2d 101, 105-106 (1973). If a regulation conveys a clear meaning, the interpretive effort is at an end. *Id.* at 106.

**{¶55}** In addressing the identical issue before us, the Twelfth District recently interpreted Ohio Adm.Code 3701-53-04(B) in *State v. Kormos*, 12th Dist. No. CA2011-08-059, 2012-Ohio-3128, *discretionary appeal not allowed by the Supreme Court of Ohio at* 2012-Ohio-5459, 2012 Ohio LEXIS 2957.

**{¶56}** In determining the common meaning of the phrase "subject test," the Twelfth District relied on the definition of the word "subject" in Webster's Dictionary, i.e., "one that is placed under the authority * * * of someone * * * an individual whose reactions or responses are studied." *Kormos* at ¶16, citing Webster's Third New International Dictionary 2275 (1993). Applying this definition to Ohio Adm.Code 3701-53-04(B), the Twelfth District held that "a 'subject test' is synonymous with running the Intoxilyzer 8000 on a single 'subject,' i.e., 'individual' under law enforcement's control." *Kormos*, *supra*. Consequently, the court held that there is only one "subject test" and "Subject Test 1" and "Subject Test 2" are simply components of the same breath test. *Kormos*, *supra*.

12

**{¶57}** The Twelfth District in *Kormos* noted that its holding is consistent with the Health Department's interpretation of Ohio Adm.Code 3701-53-04(B), as explained by Ms. Martin, who also testified in that case. *Id.* at ¶17. As in the instant case, Ms. Martin testified in *Kormos* that, pursuant to Ohio Adm.Code 3701-53-04(B), a dry gas control is required before the first blow and after the last blow, but not between a person's consecutive blows. She said that what is labeled as "Subject Test 1" and "Subject Test 2" merely refer to the breath samples blown into the machine. As in the present case, Ms. Martin said that, to avoid confusion, the Health Department had since changed the wording on the Subject Test Report form in November 2011 from "Subject Test 1" and "Subject Test 2" to "Subject Sample 1" and "Subject Sample 2." The court in *Kormos* noted that courts must give due deference to the Department's reasonable interpretation of administrative regulations. *Id.*, citing *State ex rel. Turner v. Eberlin*, 117 Ohio St.3d 381, 2008-Ohio-1117, ¶17.

**{¶58}** Further, in support of its holding, the Twelfth District noted that Ohio Adm.Code 3701-53-04(B) does not refer to a dry gas control before, after, and *in between* every subject test. *Kormos* at ¶20. As a result, the court said it could not expound on this silence to construe the phrase "subject test" beyond its common meaning to find that the code section requiring dry gas controls before and after every subject test requires them before and after every separate blow. *Id.*

**{¶59}** It is noteworthy that, while the state relies on *Kormos*, Jones does not address it. He therefore makes no attempt to challenge or distinguish it. We also note that the First District in *Cincinnati v. Nicholson*, 1st Dist. No. C-120332, 2013-Ohio-708, ¶8, recently adopted the Twelfth District's analysis and decision in *Kormos*. Further, our

13

research has not disclosed any countervailing appellate case law authority, and Jones has not referenced any such authority.

{¶60} We find the analysis adopted by the First and Twelfth Districts to be persuasive. However, we find additional support from the title of the report itself. We note that both the original and revised versions of the report approved by the Director are entitled, "Subject *Test* Report," thus indicating it is the report of a single subject test. In both versions, the entire test procedure is set forth, which includes twelve steps, including a reference to both breath samples blown by the defendant. There is nothing in the report to indicate that it is meant to be the report of two separate tests for each breath sample. To the contrary, these breath samples are simply listed as two component parts of a single test procedure. If the Director intended the report to be a report of two separate breath tests, he would have called it "Subject *Tests* Report." Since the title of the report is stated in the singular, the Director clearly intended the report to be the report of one test, which includes two breath samples.

{¶61} It does not escape our attention that, throughout his brief, Jones misrepresents the record. For example, he repeatedly suggests that Ms. Martin testified the Administrative Code was written to require a dry gas control before and after each breath sample. In fact, she testified the Code only requires a dry gas control before the first blow and after the second. Further, he argues that Ms Martin testified the Department is able to manipulate and alter data from the Subject Test Reports. In fact, she testified the Department *cannot* change any data from these reports.

{¶62} We therefore hold the plain language of Ohio Adm.Code 3701-53-04(B) requires a dry gas control before and after a subject, i.e., a defendant, is tested. Thus,

14

the Code section requires a dry gas control before a subject's first breath sample and after his second sample, but not between the two samples as they are merely two breath samples taken during one test. That is exactly what occurred here. The state thus demonstrated substantial compliance with Ohio Adm.Code 3715-53-04(B). Further, Jones failed to demonstrate prejudice resulting from anything less than strict compliance, i.e., that the absence of a dry gas control between the two blows resulted in an incorrect test result. Thus, the trial court erred in interpreting Ohio Adm.Code 5701-53-04(B) to require a dry gas control between the two breath samples.

{¶63} The state's second assignment of error is sustained.

{¶64} For its third and final assigned error, the state alleges:

{¶65} "The Portage County Municipal court erred in excluding the results of the Intoxilyzer 8000 test based on the court's finding that the records of Jones' breath test results had been changed by the Ohio Department of Health."

{¶66} The trial court found that the Department of Health had changed the records of Jones' breath test apparently because it changed the phrase "Subject Test 1" and "Subject Test 2" on the Department's website to "Subject Sample 1" and "Subject Sample 2" to describe the two breath samples Jones blew into the machine. For this additional reason, the court held that Jones' test results were inadmissible. We do not agree.

{¶67} First, the court did not state that the Department's change to its website resulted in the violation of any regulation. Because there is no requirement that the Department establish a website making available to the public all breath test results, the

Department's choice as to how it refers to breath samples on its website cannot be grounds to challenge the admissibility of Jones' test results.

{¶68} Second, Jones generally alleged a violation of Ohio Adm.Code 3701-53-01(A), which provides: "The results of the tests shall be retained for not less than three years." However, Ms. Martin's testimony that the Department retains all test results indefinitely in its database demonstrated it substantially complied with the three-year record retention requirement. Despite this showing, Jones failed to demonstrate prejudice resulting from any failure to strictly comply with the retention requirement, i.e., that the Department's change in how it refers to the breath samples on its website resulted in an incorrect test result. On nearly identical facts, the Twelfth District in *State v. Dugan*, 12th Dist. No. CA2012-04-081, 2013-Ohio-447, ¶38, held the state proved substantial compliance with Ohio Adm.Code 3701-53-01(A). To the extent the trial court found a violation of this Code section, we hold the trial court erred.

{¶69} The state's third assignment of error is sustained.

{¶70} For the reasons stated in the opinion of this court, it is the judgment and order of this court that the judgment of the Portage County Municipal Court, Ravenna Division, is reversed, and the matter is remanded to the trial court for further proceedings consistent with this opinion.

DIANE V. GRENDELL, J., concurs in judgment only with a Concurring Opinion,

THOMAS R. WRIGHT, J., concurs in part, dissents in part with a Concurring/Dissenting Opinion.

16

_____

DIANE V. GRENDELL, J., concurs in judgment only with a Concurring Opinion.

{¶71} I concur in the judgment and opinion of this court with respect to the second and third assignments of error. With respect to the first assignment of error, I concur in judgment only for the reasons stated in my concurring/dissenting opinions in *State v. Carter*, 11th Dist. No. 2012-P-0027, 2012-Ohio-5583, and *State v. Rouse*, 11th Dist. No. 2012-P-0030, 2012-Ohio-5584.

_____

THOMAS R. WRIGHT, J., concurs in part, dissents in part with a Concurring/Dissenting Opinion.

{¶72} I concur with the disposition of assignments of error two and three. However, I dissent regarding the disposition of assignment of error one for the reasons stated in my dissenting opinion in *State v. Lucarelli*, 11th Dist. No. 2012-P-0065, 2013-Ohio-1606.