[Cite as *State v. Love*, 2014-Ohio-4287.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2013-A-0062** |
| KARIN L. LOVE, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas.
Case No. 2011 CR 131.

Judgment: Affirmed.

*Nicholas A. Iarocci*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047-1092 (For Plaintiff-Appellee).

*Michael A. Hiener*, P.O. Box 1, Jefferson, OH 44047 (For Defendant-Appellant).

TIMOTHY P. CANNON, P.J.

{¶1} Appellant, Karin L. Love, appeals the judgment entered by the Ashtabula County Court of Common Pleas. The trial court sentenced Love to a prison term of six years for aggravated vehicular homicide.

{¶2} On April 3, 2011, Michael Totora and his two sons were returning from an evening with family and friends celebrating his parents' 50th wedding anniversary. On their drive home, the car they were driving broke down along U.S. Route 20 in

Ashtabula County, near the Geneva City line. While waiting for assistance, Mr. Totora was struck by a vehicle operated by Love. Mr. Totora died at the scene.

{¶3} On May 6, 2011, Love was indicted by the Ashtabula County Grand Jury on three counts. The charges consisted of: Count 1, aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a); Count 2, operating a vehicle while under the influence ("OVI") in violation of R.C. 4511.19(A)(1)(a); and Count 3, OVI in violation of R.C. 4511.19(A)(1)(d). Love initially pled not guilty to these charges.

{¶4} On June 1, 2011, Love filed a motion to suppress the results from her breath test. Appellee, the state of Ohio, responded to Love's motion to suppress on October 5, 2011. Love then filed a supplemental motion to suppress, and multiple responses and replies were subsequently filed through July 24, 2012.

{¶5} On February 19, 2013, the trial court indicated in a judgment entry that it would not permit Love to challenge the general reliability of the Intoxilyzer 8000 breathalyzer machine. The trial court found that the issue of the Intoxilyzer 8000's general reliability had already been decided by this court and that allowing a general challenge would be inappropriate given existing precedent.

{¶6} On March 15, 2013, following the trial court's judgment entry prohibiting a general challenge to the reliability of Love's breath test, Love filed a motion listing seven specific challenges to her breath test. Appellee responded in opposition to Love's specific challenges on April 26, 2013.

{¶7} On May 22, 2013, the trial court, in a 12-page judgment entry, overruled Love's motion to suppress. Distilling the trial court's judgment entry to its essence, the

2

trial court found no reason to suppress the evidence from the breath test administered at the Ohio State Highway Patrol Post following the crash.

{¶8} On May 28, 2013, Love withdrew her not guilty plea and pled no contest to the three charged counts.

{¶9} On September 26, 2013, the trial court filed its judgment entry of sentence. The trial court found Counts 2 and 3 to be of similar import to Count 1, the aggravated vehicular homicide count and, for the purposes of sentencing, merged Counts 2 and 3 into Count 1. Love was sentenced to a mandatory prison term of six years for aggravated vehicular homicide. The trial court also sentenced Love to three years of post-release control, a lifetime driver's license suspension, and restitution to Mr. Totora's family for his funeral expenses.

{¶10} Love timely appeals, setting forth two assignments of error.

{¶11} In her first assignment of error, Love argues:

{¶12} "The trial court erred when it denied Appellant's motion to suppress."

{¶13} Appellate review of a trial court's ruling on a motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8. We accept the trial court's findings of fact when they are supported by competent, credible evidence. *State v. Guysinger*, 86 Ohio App.3d 592, 594 (4th Dist.1993). If the trial court's findings of fact are supported by the record, we review the trial court's application of the law to those facts de novo. *State v. Djisheff*, 11th Dist. Trumbull No. 2005-T-0001, 2006-Ohio-6201, ¶19.

{¶14} Under this assignment of error, Love sets forth three issues for review. In her first issue for review, Love asserts the trial court improperly overruled her motion to

suppress because the requirements of Ohio Adm.Code 3701-53-04(B) were not "substantially complied with when a dry gas control test was not run between the two samples taken from appellant." Under this issue, Love asks us to revisit our decision in *State v. Jones*, 11th Dist. Portage No. 2012-P-0107, 2013-Ohio-4114, ¶36. We decline to do so and, instead, choose to follow the precedent of this court.

{¶15} The version of Ohio Adm.Code 3701-53-04(B) in effect at the time of Love's arrest required that the Intoxilyzer 8000 automatically perform a dry gas control test before and after each subject test. Specifically, "[i]nstruments listed under paragraph (A)(3) of rule 3701-53-02 of the Administrative Code [i.e., the Intoxilyzer 8000] shall automatically perform a dry gas control test *before and after every subject test* * * * using a dry gas standard traceable to the national institute of standards and technology (NIST)." Ohio Adm.Code 3701-53-04(B) (emphasis added).

{¶16} "Calibration is the process by which a breathalyzer machine is tested for its range of accuracy." *State v. Booth*, 151 Ohio App.3d 635, 638 (9th Dist.2003). The calibration sequence for the Intoxilyzer 8000 is documented in a form called "Subject Test Report." As of the date of Love's test, the report set forth the actual calibration procedure as follows:

[1.] Air Blank
[2.] Diagnostic
[3.] Air Blank
[4.] Dry Gas Control
[5.] Air Blank
[6.] Subject Test 1
[7.] Air Blank
[8.] Air Blank
[9.] Subject Test 2
[10.] Air Blank
[11.] Dry Gas Control
[12.] Air Blank

4

{¶17} "Air Blanks" ensure that the previous sample has been fully purged from the machine. "Subject Test 1" and "Subject Test 2" indicate each time an individual blows into the machine. "Dry Gas Control" tests check the calibration of the instrument to ensure its results are accurate. *Jones, supra*, at ¶51.

{¶18} Love asserts that, because the Subject Test Report refers to the breath samples as "Subject Test 1" and "Subject Test 2," a subject test occurs each time an accused blows into the machine. She further argues that because Ohio Adm.Code 3701-53-04(B) requires a dry gas control test before and after every subject test, a dry gas control had to be performed before and after each blow into the machine. She argues that because the Intoxilyzer 8000 used to test her breath samples did not run a dry gas control before and after each time she blew into the instrument, as required by Ohio Adm.Code 3701-53-04(B), the results are inadmissible.

{¶19} This court faced the same issue and the same type of "Subject Test Report" form in *Jones, supra*. In that case, we determined that each breath sample is simply a component part of a single test procedure. *Id.* at ¶60. Other appellate districts have also reached the same result. For example, the Twelfth Appellate District determined that the plain language of Ohio Adm.Code 3701-53-04(B) required a dry gas control before "Subject Test 1" and after "Subject Test 2," as those terms were used on the "Subject Test Form," but that no dry gas control was required between them. *State v. Kormos*, 12th Dist. Clermont No. CA2011-08-059, 2012-Ohio-3128, ¶16. Likewise, the First Appellate District reached the same conclusion, holding that the plain language of Ohio Adm.Code 3701-53-04(B) requires a dry gas control test before a subject's first breath sample and after the subject's second breath sample, but not between the two

5

samples. *Cincinnati v. Nicholson*, 1st Dist. Hamilton No. C-120332, 2013-Ohio-708, ¶11.

{¶20} Accordingly, we decline to revisit our holding in *Jones* and find that Love's first issue for review, under her first assignment of error, is without merit.

{¶21} In her second issue for review, Love asserts that Trooper Emery was not properly authorized to operate the Intoxilyzer 8000 because he possessed a permit instead of an operator card.

{¶22} At the time of Love's arrest, Ohio Adm.Code 3701-53-09(D) stated that "[i]ndividuals desiring to function as operators using [the Intoxilyzer 8000] shall apply to the director of health for operator access cards on forms prescribed and provided by the director of health." The same provision now reads: "Individuals desiring to function as operators using [the Intoxilyzer 8000] shall apply to the director of health for a permit, which shall be in the form of an operator access card, on forms prescribed and provided by the director of health."

{¶23} Under this issue for review, Love asks us to revisit our decision in *State v. Walsky*, 11th Dist. Portage No. 2012-P-0109, 2013-Ohio-4115. In *Walsky*, we held that "the difference between an 'access card' and a 'permit,' for operator certification purposes, is merely nominal." *Id.* at ¶27. We decline to revisit that decision and instead choose to follow the precedent of this court as set forth in *Walsky*. Love's second issue for review is without merit.

{¶24} In her third issue for review, Love asserts the trial court erred when it ruled that it would not allow a general challenge to the Intoxilyzer 8000. The trial court's

6

ruling prohibiting a general challenge was based on this court's decision in *State v. Bergman*, 11th Dist. Portage 2012-P-0124, 2013-Ohio-5811.

**{¶25}** In *Bergman*, this court stated that, "[w]here the breath testing device at issue has been approved by the Director of the Ohio Department of Health, there is no need for the state to prove the general reliability of the device itself." *Id.* at ¶3. In this case, the trial court properly prohibited general challenges to the reliability of the Intoxilyzer 8000. Love does not make any argument as to why this court should change its position. Accordingly, appellant's third issue for review under her first assignment of error is without merit.

**{¶26}** As each of the three issues presented for review within Love's first assignment of error are without merit, Love's first assignment of error is not well taken.

**{¶27}** In her second assignment of error, Love argues:

**{¶28}** "Appellant's trial counsel was ineffective."

**{¶29}** Specifically, Love argues her trial counsel was ineffective when he refused to complete the suppression hearing. In order to prevail on an ineffective assistance of counsel claim, the appellant must demonstrate from the record that trial counsel's performance fell below an objective standard of reasonable representation and that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus, applying the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). If a claim of ineffective assistance can be disposed of by showing a lack of sufficient prejudice, there is no need to consider the first prong, i.e., whether trial counsel's performance was deficient. *Bradley* at 143, citing *Strickland* at 697.

There is a general presumption that trial counsel's conduct is within the broad range of competent professional assistance. *Id.* at 142.

{¶30} Furthermore, decisions on strategy and trial tactics are generally granted wide latitude in professional judgment, and it is not the duty of a reviewing court to analyze trial counsel's legal tactics and maneuvers. *State v. Gau*, 11th Dist. Ashtabula No. 2005-A-0082, 2006-Ohio-6531, ¶35, citing *Strickland* at 689. Debatable trial tactics and strategies do not constitute ineffective assistance of counsel. *State v. Phillips*, 74 Ohio St.3d 72, 85 (1995), citing *State v. Clayton*, 62 Ohio St.2d 45, 49 (1980).

{¶31} First, Love argues that trial counsel was ineffective for declining to cross-examine Mary Martin, Program Administrator for Alcohol and Drug Testing for the Ohio Department of Health. Love fails to demonstrate how she was prejudiced by her trial counsel's failure to cross-examine Martin. Indeed, at the hearing on Love's motion to suppress, her trial attorney explained that he had "cross-examined Mary Martin many times. I don't believe that she will enter into evidence anything additional that is important to my motion to suppress. So for those reasons, Your Honor, I am going to not cross-examine Ms. Martin." There is nothing in the record to indicate how cross-examination of Martin would have benefitted the arguments raised in the motion to suppress. Accordingly, Love fails to establish prejudice for her trial counsel's failure to cross-examine Martin.

{¶32} Next, Love states that trial counsel failed to "point out deficiencies in the regulations or the operation of the machine in question." However, Love fails to state what these deficiencies were and how they prejudiced her. Indeed, appellant's trial

8

counsel made seven specific challenges to her breath test. Each of these was overruled.

**{¶33}** Finally, Love claims her trial counsel was ineffective for failing to preserve a general challenge to the Intoxilyzer 8000. Love argues that the issue of whether the state needs to prove the general scientific reliability of a breath testing device that has been approved by the Director of the Ohio Department of Health is not yet settled. This court has held in an en banc proceeding that "[w]here the breath testing device at issue has been approved by the Director of the Ohio Department of Health, there is no need for the state to prove the general reliability of the device itself." *State v. Bergman*, 11th Dist. Portage No. 2012-P-0124, 2013-Ohio-5811, ¶3. Our decision in *Bergman* comports with that of other Ohio appellate districts that have considered the issue. *See, e.g.*, *State v. Dugan*, 12th Dist. Butler No. CA2012-04-081, 2013-Ohio-447, ¶22. Love argues that until the Ohio Supreme Court rules on this issue, it was ineffective assistance of trial counsel not to preserve the issue for appeal. We disagree.

**{¶34}** At the hearing on Love's motion to suppress, Love's trial attorney stated: "I did have two witnesses available or who were prepared to testify to the scientific reliability and the workings of the Intoxilyzer 8000; specifically, the Intoxilyzer 8000 and specifically this machine here in question." Love's counsel did not call these witnesses because the trial court's February 19, 2013 docket entry prohibited an attack on the general reliability of the Intoxilyzer 8000. However, the testimony of these two possible witnesses is not in the record. As a result, we cannot definitively say whether Love's trial counsel was ineffective for not calling them to testify. These claims are often better suited for postconviction proceedings. Addressing them in a postconviction proceeding

9

would allow testimony in the record as to what the witnesses would have testified, and also allow the state to explore whether the failure to request suppression was legitimate trial strategy. *See State v. Cooperrider*, 4 Ohio St.3d 226, 228 (1983).

{¶35} Accordingly, Love's second assignment of error is without merit.

{¶36} For the reasons stated above, the judgment of the Ashtabula County Court of Common Pleas is hereby affirmed.


CYNTHIA WESTCOTT RICE, J., concurs,

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

_____

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

{¶37} Finding merit in appellant's first issue presented under the first assignment of error, I would reverse and remand. I agree with appellant that former Ohio Adm.Code 3701-53-04(B) was ambiguous, and would decline to apply this court's prior decision in *Jones*, 11th Dist. Portage No. 2012-P-0107, 2013-Ohio-4114.

{¶38} As the majority recounts, in *Jones* appellant raised essentially the same argument: that former Ohio Adm.Code 3701-53-04(B) required dry gas control tests be run before and after each subject test; that the protocol for the machine indicates two subject tests must be run on each person being tested; and, that the procedure actually used was to run dry gas controls at the beginning and end of the entire session – but not between the two individual tests comprising the whole test.

{¶39} In *Jones*, this court concluded the term "subject test" as used in former Ohio Adm.Code 3701-53-04(B) referred to the whole testing procedure, not the taking of

10

the individual breath samples, even though the protocol for the machine terms these subject tests. *Jones* at ¶34-62. The majority correctly points out the same conclusion has been reached by the Twelfth and First Districts. *Kormos*, 12th Dist. Clermont No. CA2011-08-059, 2012-Ohio-3128; *Nicholson*, 1st Dist. Hamilton No. C-120332, 2013-Ohio-708. However, as appellant points out, Ohio Adm.Code 3701-53-04(B) has been amended to add the phrase, "a subject test shall include the collection of two breath samples." Presumably, the Director of Health has done this to bring the regulation in line with the decisions.

{¶40} Statutes – and administrative regulations having the force of statutes – are ambiguous "'if the language is susceptible of more than one reasonable interpretation.'" *State v. Swidas*, 11th Dist. Lake No. 2009-L-104, 2010-Ohio-6436, ¶17, quoting *State v. Evankovich*, 7th Dist. Mahoning No. 09 MA 168, 2010-Ohio-3157, ¶8.

{¶41} I agree with appellant that amendment of the regulation would have been superfluous if the former version had been clear and unambiguous. That it was not is indicated by the fact the issue was presented to at least three Ohio appellate courts. Consequently, I would find former Ohio Adm.Code 3701-53-04(B) was ambiguous, and would reverse and remand on that basis.

{¶42} I respectfully dissent.

11