[Cite as *State v. Howard*, 2022-Ohio-3958.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

| STATE OF OHIO | | C.A. No. 21AP0034 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| JOHN D. HOWARD | | WAYNE COUNTY MUNICIPAL COURT COUNTY OF WAYNE, OHIO |
| Appellant | | CASE No. 2020 TR-C 000874 |

DECISION AND JOURNAL ENTRY

Dated: November 7, 2022

HENSAL, Judge.

{¶1}    John Howard appeals a judgment of the Wayne County Municipal Court that denied his motion to suppress.  For the following reasons, this Court affirms.

I.

{¶2}    Trooper Josiah Custer testified that he was on patrol at night in Wooster Township when he observed the right two wheels of a vehicle go off the roadway as it was making a left turn from U.S. 30 onto Fry Road.  The trooper turned his lights on and then watched the vehicle drive on the yellow line between the lanes of traffic on Fry Road.  According to Trooper Custer, his patrol vehicle has a dash camera that begins to record from 60 seconds before he activates his lights.  He testified that, because of the angle of the camera, it did not capture the violation he observed.  He explained that, whereas the camera captures the vehicle "kind of off towards the right[ ] side of the road, kind of coming back," he "was able to see the entire culmination of the events where [the vehicle] actually did go off the road."  The trooper acknowledged that the right

tires of the vehicle appear to be off the roadway at the 1:25 mark of the video and that its left tires are completely on the double yellow line at the 1:28 mark.

{¶3} After making his observations, Trooper Custer stopped the vehicle, which was being driven by Mr. Howard. Upon further investigation, Trooper Custer arrested Mr. Howard for operating under the influence ("OVI"). He also cited him for a marked lanes violation. Mr. Howard moved to suppress the evidence against him, arguing that Trooper Custer did not have reasonable articulable suspicion to stop him. Following a hearing, the municipal court denied the motion, finding that Trooper Custer had probable cause to stop Mr. Howard's vehicle. Specifically, the court found that Mr. Howard committed a traffic violation prior to the stop, which was going off the right side of the roadway while making a left turn onto Fry Road. The court found that a violation was visible at the 1:25 mark of the dash camera video. The court also found that the trooper conducted field sobriety tests appropriately and that there was probable cause to arrest Mr. Howard for suspected OVI. The court further found that Trooper Custer substantially complied with the regulations for urine screening.

{¶4} Following the denial of his motion to suppress, Mr. Howard pleaded no contest to one count of OVI. The municipal court found him guilty of the offense and sentenced him to 120 days in jail. It also fined him $1,200 and suspended his driver's license for five years. Mr. Howard has appealed, assigning as error that the municipal court incorrectly denied his motion to suppress.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS BECAUSE THE ARRESTING OFFICER DID NOT HAVE REASONABLE ARTICULABLE SUSPICION TO STOP AND DETAIN HIIM.

{¶5}    Mr. Howard argues that the traffic stop was unconstitutional because Trooper Custer did not have reasonable articulable suspicion to stop and detain him.  A motion to suppress evidence presents a mixed question of law and fact.  *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.  "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses."  *Id*., citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992).  Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence."  *Id*., citing *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982).  "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard."  *Id*., citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997).  Accordingly, this Court grants deference to the trial court's findings of fact but conducts a de novo review of whether the trial court applied the appropriate legal standard to those facts.  *State v. Booth*, 151 Ohio App.3d 635, 2003-Ohio-829, ¶ 12 (9th Dist.).

{¶6}    "[A] traffic stop is constitutionally valid if an officer has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime."  *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, ¶ 7.  The officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion."  (Alteration in original). *State v. Jenkins*, 9th Dist. Lorain No. 15CA010826, 2016-Ohio-5190, ¶ 6, quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968).  "[T]he propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances."  *Mays* at ¶ 7, quoting *State v. Freeman*, 64 Ohio St.2d 291 (1980), at paragraph one of the syllabus.  "[I]f an officer's decision to stop a motorist for a criminal violation,

including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid." *Id*. at ¶ 8.

{¶7} According to Trooper Custer, he stopped Mr. Howard because he saw him commit a marked lanes violation. Ohio Revised Code Section 4511.33(A)(1) provides that, if a road "has been divided into two or more clearly marked lanes for traffic, * * * [a] vehicle * * * shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety."

{¶8} At the conclusion of the suppression hearing, the municipal court found that, because the dash camera was mounted in a particular location, it could not capture everything that Trooper Custer saw, including when Mr. Howard turned left while the trooper was still on Route 30. The court found credible the trooper's testimony that he saw Mr. Howard travel off the right side of the roadway. The court also explained that, when Mr. Howard's vehicle does come back into view of the dash camera "you can see the * * * back right tire at least kind of popping out of the portion that the truck, the back of the truck bounces a bit as it is coming back out of the portion of the roadway where it had been off previously." Following the hearing, the municipal court issued a written decision that incorporated its findings from the suppression hearing. It also wrote that Mr. Howard committed a traffic violation before the stop, "namely going off the right side of the roadway while making a left turn * * * [t]his is visible at approximately one minute twenty five seconds (1:25) on [the video]."

{¶9} Mr. Howard argues that the video belies the municipal court's finding that he committed a traffic violation. Trooper Custer testified, however, that the violation was not captured by the dash camera, which the municipal court found credible. As Mr. Howard's vehicle

re-enters the view of the dash camera as the trooper turned onto Fry Road to follow him, Mr. Howard's vehicle is on the far right side of the roadway and the back of the vehicle bounces in a way that is consistent with part of the vehicle coming back onto the roadway. Accordingly, upon review of the record, Mr. Howard has not established that the municipal court's factual findings are not supported by competent credible evidence.

{¶10} Mr. Howard also argues that he could not commit a marked lanes violation on Fry Road because it is not divided into two or more clearly marked lanes for traffic. Mr. Howard appears to mistakenly believe that the roadway in question must have multiple lanes headed in the same direction. Section 4511.33(A), however, indicates that it applies whenever a roadway "has been divided into two or more clearly marked lanes for traffic" or whenever "traffic is lawfully moving in two or more substantially continuous lines in the same direction[.]" Fry Road is divided into multiple lanes, one for northbound traffic and one for southbound traffic, which are separated by a double yellow line. As the State has argued, although there was no fog line along the right side of the road, a vehicle travelling partially off the roadway would not be driving "entirely within a single lane or line of traffic" as required by Section 4511.33(A)(1).

{¶11} Mr. Howard has also challenged the credibility of Trooper Custer, particularly how the trooper ended up behind him as he was turning on to Fry Road. Mr. Howard argues that the trooper was not just on routine patrol but spotted a vehicle that looked like his as it exited the parking lot of a bar and decided to follow him. The trooper lost the vehicle at one point and had to travel at 100 miles per hour in order to catch up. The municipal court, however, was in the best position to evaluate whether Trooper Custer was credible when he testified that he saw Mr. Howard commit a marked lanes violation.

**{¶12}** Upon review of the record, we conclude that the municipal court did not err when it determined that the trooper had reasonable articulable suspicion to initiate a traffic stop. Accordingly, Mr. Howard has not established that the trial court incorrectly denied his motion to suppress. Mr. Howard's assignment of error is overruled.

III.

**{¶13}** Mr. Howard's assignment of error is overruled. The judgment of the Wayne County Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

TEODOSIO, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

BRENT L. ENGLISH, Attorney at Law, for Appellant.

DAVID R. LUTZ, Prosecuting Attorney, and SHANNON PARKER, Assistant Prosecuting Attorney, for Appellee.